1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TERRANCE LAMAR WILBURN,                          No.  No. 2:24-cv-0500 WBS AC

12                    Petitioner,

13         v.                                          ORDER AND FINDINGS AND
                                                      RECOMMENDATIONS
14    JAMAL ROWE,[1]

15                    Respondent.

16

17           Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the petition filed on

19    February 20, 2024, which challenges petitioner's 2022 conviction for threatening a government

20    official.  ECF No. 1.  Respondent has answered, ECF No. 16, and petitioner has filed a traverse,

21    ECF No. 22.

22    ////

23    ////

24    _____

25    [1]  Jamal Rowe, the Chief Deputy Administrator of Northern Region Adult Parole, is substituted as
      respondent in this case.  See ECF No. 16 at 11, n.1.  Since filing the petition, which named Jeff
26    Macomber as respondent, petitioner has been released to parole.  See ECF No. 7 (notice of
      change of address).  A federal petition for writ of habeas corpus must name as respondent the
27    state officer or entity having custody of the petitioner.  See 28 U.S.C. § 2254; Rule 2(a) of the
      Rules Governing Section 2254 Cases in the United States District Courts.  The chief parole
28    official is now the proper respondent.

                                                   1

BACKGROUND

I.  Proceedings in the Trial Court

  A. Preliminary Proceedings

  Petitioner was charged in Sacramento County with threatening a public officer (Cal. Penal Code § 71), charged as a felony, and misdemeanor battery against a peace officer (Cal. Penal Code § 243(b)).[2]  The prosecution also alleged that petitioner had two prior strike convictions: a 2017 assault with a deadly weapon (Cal. Penal Code § 245(a)(1)), and a 2002 assault with intent to commit a felony (Cal. Penal Code § 220).

  Petitioner waived his right to counsel pursuant to Faretta v. California, 415 U.S. 975 (1974), and proceeded pro se through all pretrial proceedings and the trial.  Before trial, petitioner filed numerous motions including discovery motions, motions to dismiss for lack of a speedy trial, motions to dismiss for violations of due process, and motions to set aside the information pursuant to Cal. Penal Code § 995.

  B. The Evidence Presented at Trial[3]

   1. Prosecution Case

  Parole agent Joshua Grey testified for the prosecution.  As part of his duties, he conducted home visits and random drug tests of parolees.  On the day of the offense, Agent Grey visited petitioner at a Travelodge to conduct a home visit.  Petitioner's parole program involved gift card incentives in which petitioner would earn gift cards for completing designated activities.  On the day before the offense, petitioner had argued with Grey on the phone about whether he would be getting gift cards.  When Grey knocked on petitioner's door, petitioner opened the door, retreated to the back of the room, and yelled, "Just give me the damn drug test, because this is the last one you're going to get."

  Agent Grey approached petitioner with a urinalysis bottle and petitioner slapped his hand, knocking the bottle to the floor.  Grey asked petitioner to explain his behavior, and petitioner

---

[2]  The misdemeanor count was dismissed at trial.
[3]  This factual summary is adapted from the opinion of the California Court of Appeal, ECF No. 14-22 at 2-3.

1   "took an aggressive stance," and said, "What is your bitch ass going to do about it?"  Grey

2   thought the situation was "becoming unsafe" and went to the stairwell outside the room to call his

3   supervisor.  As Grey went down the steps, petitioner continued to yell at him and threaten to "beat

4   [his] ass."  Grey stayed under the outdoor walkway near the stairs to provide himself cover if

5   petitioner threw anything at him.  Grey was concerned for his own safety and thought petitioner

6   would try to fight him.  Petitioner continued to yell and threw a bottle at Grey's car.

7       Parole agent Jeffrey Lewis arrived a short time later to support Grey.  The two went to

8   petitioner's room and placed him under arrest.  Petitioner yelled at Grey, saying: "You couldn't

9   do anything yourself.  I would have beat your ass."  As they placed petitioner in the car, petitioner

10  said, "I should have just swung on you when I opened the door.  That would teach you."

11      Agent Lewis testified that when he arrived at the Travelodge, he saw petitioner yelling at

12  Grey from the second story of the motel.  Lewis corroborated Grey's testimony that they

13  handcuffed petitioner and petitioner yelled at Grey.

14          2.  Defense Case

15      Petitioner called his brother-in-law to testify.  On the morning of the offense, the brother-

16  in-law was in the Travelodge parking lot and saw Agent Grey arrive.  He could not see into the

17  motel room but heard petitioner yelling.  He agreed petitioner yelled at Grey and called him

18  names, but denied petitioner made any threats.

19      Petitioner also called his ex-girlfriend to testify.  She said she overheard a conversation

20  between petitioner and Agent Grey the day before the offense; petitioner had asked the agent for

21  gift cards and mail.  Grey told petitioner he needed to get a job and petitioner replied he was

22  disabled.  Grey told petitioner he would bring petitioner's mail and gift cards the next day for his

23  home visit.

24      C.  Outcome

25      On January 3, 2022, the jury found petitioner guilty of threatening a public officer.  The

26  trial court found the prior strike allegations true based on the certified records of conviction.

27  Petitioner stipulated that he did not comply with the terms of his parole, that he had served a prior

28  prison term, and that he was on parole at the time of the current offense.

3

Petitioner received several extensions of time to file a motion for new trial, but had not done so by May 20, 2022.  On that date, the trial court proceeded to sentencing and imposed the midterm of two years, doubled for the prior strikes, for a total of four years.  Several days later, petitioner filed motions for a new trial.

II.    Post-Conviction Proceedings

Petitioner timely appealed.  Appointed counsel submitted a brief pursuant to People v. Wende, 25 Cal.3d 436 (1979),[4] and the California Court of Appeal affirmed the judgment of conviction on August 23, 2023.  ECF No. 14-22.  Petitioner did not file a petition for review in the California Supreme Court.

Petitioner filed numerous habeas petitions in the state courts both before and after his conviction: a total of four petitions in the superior court, three in the California Court of Appeal, and three in the California Supreme Court.  See ECF No. 16 at 12 (detailing procedural history of state petitions).  Respondent affirmatively acknowledges that all claims are exhausted.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99 (2011).  State court rejection of a federal claim will be presumed to have been on the merits

---

[4]  A "Wende brief" seeks independently review of the entire record by the appellate court "to determine for itself whether there were any arguable issues."  Wende, 25 Cal.3d at 440.

1    absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

2    489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

3    decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

4    may be overcome when there is reason to think some other explanation for the state court's

5    decision is more likely."  Id. at 99-100.

6        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

7    principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

8    U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

9    Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

10   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

11   (2013).

12       A state court decision is "contrary to" clearly established federal law if the decision

13   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

14   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

15   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

16   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

17   was incorrect in the view of the federal habeas court; the state court decision must be objectively

18   unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

19       Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

20   Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

21   reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

22   words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

23   Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

24   confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

25   724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

26   summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

27   state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

28   must determine what arguments or theories may have supported the state court's decision, and

1  subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

2                              DISCUSSION

3     I.        Claim One: Ineffective Assistance of Appellate Counsel

4              A.  Petitioner's Allegations and Pertinent State Court Record

5         Petitioner alleges that his appointed appellate counsel rendered ineffective assistance by

6  refusing to augment the record on appeal as petitioner requested.  He also appears to challenge

7  counsel's decision to file a Wende brief rather than raising appellate issues that petitioner wished

8  presented.  ECF No. 1 at 5.  The petition does not identify the materials with which petitioner

9  wished to augment the record, the issues he faults counsel for failing to raise on appeal, or the

10  relationship between the two.  Id.  The traverse contains extensive background information and

11  argument regarding petitioner's attempts at augmentation, counsel's failure to ensure a complete

12  record, and the general right of a criminal defendant to an adequate record on appeal, ECF No. 22

13  at 30-36, but it also fails to identify any specific meritorious appellate claim that was forfeited.

14              B.  The Clearly Established Federal Law

15         A criminal defendant enjoys the right to effective assistance of counsel on appeal.  Evitts

16  v. Lucey, 469 U.S. 387, 391 (1985).  Claims that this right has been violated are evaluated under

17  the framework of Strickland v. Washington, 466 U.S. 668 (1984).  Smith v. Robbins, 528 U.S.

18  259, 285 (2000).  Under Strickland, the Sixth Amendment is violated when (1) counsel's

19  representation falls below an objective standard of reasonableness, and (2) the defendant is

20  prejudiced by the unreasonable performance.  Strickland, 466 U.S. at 692, 694.  To demonstrate

21  prejudice in the appellate context, petitioner must show a reasonable probability that he would

22  have prevailed on appeal absent counsel's alleged errors.  Smith, 528 U.S. at 285-286.

23              C.  The State Court's Ruling

24         The California Supreme Court denied this claim without comment or citation.  See ECF

25  No. 1 at 12.  Accordingly, this court's review of that decision proceeds according to Richter,

26  supra, 562 U.S. at 102.  In sum, federal relief is unavailable unless there is no objectively

27  reasonable basis in federal law for the state court's decision.  Id.

28  ////

                                    6

1           D.  Objective Reasonableness Under § 2254(d)

2         The state court's denial of this claim cannot have been unreasonable, because the court

3 was not presented with facts which if true would have stated a prima facie <u>Strickland</u> claim.  <u>See</u>

4 <u>Pinholster</u>, 563 U.S. at 188 n.12 (California summary denial indicates determination that

5 petitioner failed to state a prima facie case); <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1054-55 (9th Cir.

6 2003) (absence of prima facie case is the determination reviewed for reasonableness under

7 AEDPA), <u>cert. denied</u>, 543 U.S. 8250 (2004).  Absent specific facts regarding appellate counsel's

8 acts and omissions, a petitioner cannot state a prima facie case of deficient performance—let

9 alone prejudice.  <u>See</u> <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994) ("[c]onclusory allegations

10 which are not supported by a statement of specific facts do not warrant habeas relief.").

11         Moreover, clearly established federal law provides that appellate counsel has no

12 constitutional duty to raise issues which, in counsel's judgment, have little or no likelihood of

13 success.  <u>Jones v. Barnes</u>, 463 U.S. 745, 751-53 (1983).  To the contrary, winnowing out weak

14 arguments on appeal is a hallmark of effective advocacy, not an indicator of ineffectiveness.

15 <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986); <u>see also</u> <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th

16 Cir. 1989).  Reviewing courts must apply a presumption of effective appellate advocacy, which is

17 overcome only where the forfeited or omitted issues are "clearly stronger" than those presented

18 on appeal.  <u>Smith v. Robbins</u>, 528 U.S. at 288.  Here petitioner has made no such showing, and

19 the state court was therefore obliged to apply the presumption of reasonable performance.

20         The state court was also obliged to reject the claim for lack of a prima facie prejudice

21 showing.  Petitioner's failure to clearly identify, let alone demonstrate the merit of, the appellate

22 issues he faults counsel with forfeiting or omitting amounts to a total failure to meet his burden on

23 the prejudice prong.  <u>See</u> <u>Smith</u>, 528 U.S. at 288.  <u>Strickland</u> itself therefore compelled denial of

24 the claim.  <u>Strickland</u>, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the

25 ground of lack of sufficient prejudice, which we expect will often be so, that course should be

26 followed.").  Accordingly, the state court's ruling was not objectively unreasonable and federal

27 habeas relief is unavailable on Claim One.

28 ////

1    II.    Claim Two: Trial Court's Jurisdiction

2          A.    Petitioner's Allegations and Pertinent State Court Record

3          Petitioner alleges that the trial court lacked jurisdiction to proceed to trial.  ECF No. 1 at

4    1.  The facts alleged in support of this claim are that on September 27, 2021, Judge Currier of the

5    superior court denied petitioner's motion to set aside the information, and on February 7, 2022,

6    Judge White of the superior court denied his habeas petition raising the same issue.  Id.

7          Although petitioner does not provide the context for his claim, the referenced superior

8    court orders explain that during the relevant period, the time to conduct preliminary examinations

9    in California had been extended to 30 days on an emergency basis due to the Covid pandemic,

10   and that petitioner's preliminary hearing had been conducted within the 30 days.  See 1 CT 146-

11   147 (ECF No. 41-1 at 146-147) (pro se motion to set aside information); 2 CT 313-315 (ECF No.

12   14-2 at 13-15) (superior court order dated September 27, 2021, denying motion); ECF No. 14-30

13   at 2 (superior court order dated February 7, 2022, denying habeas relief on the issue).

14          B.    The Clearly Established Federal Law

15         Petitioner has identified no U.S. Supreme Court precedent establishing a rule that

16   preliminary hearings must be held within a certain time (let alone 10 days) as a matter of

17   constitutional right.  The court is aware of none.  Neither has petitioner identified, nor has the

18   court located, any clearly established federal law finding a jurisdictional defect or a federal due

19   process violation when a state trial court exceeds a state statutory requirement for the timeliness

20   of a preliminary hearing.  To the contrary, it is well established that a probable cause

21   determination is not a constitutional prerequisite to a charging decision.  Gerstein v. Pugh, 420

22   U.S. 103, 125 n.26 (1975); see also Howard v. Cupp, 747 F.2d 510, 510 (9th Cir. 1984) (well

23   settled that there is no fundamental right to a preliminary hearing), cert. denied, 471 U.S. 1021

24   (1985).

25         C.    The State Court's Ruling

26         Because the California Supreme Court denied this claim without comment, this court

27   "looks through" the silent denial to the last reasoned state court decision.  See Ylst v.

28   Nunnemaker, 501 U.S. 797 (1991).  Because the superior court sitting in habeas issued the last

8

1  reasoned decision adjudicating the claim, that is the decision reviewed for reasonableness under §

2  2254(d).  See Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).  The superior court

3  ruled as follows:

> … The court had valid authority pursuant to the emergency orders in place extending the statutory deadline set forth in Penal Code section 659b. On March 30, 2020, the Chief Justice issued a statewide emergency order that, among many other things, authorized superior courts to "[e]xtend the time period provided in section 859b of the Penal Code for the holding of a preliminary examination and the defendant's right to release from 10 court days to not more than 30 court days." On April 1, 2020, the presiding judge of the Sacramento Superior Court issued an order implementing the Chief Justice's order. Even though Government Code section 68115 limits extensions of the section 859b time period "to not more than 15 court days," the Chief's Justice's March 30th older also noted that "Governor Newsom, also responding to the crisis. On March 27, 2020, issued Executive Order N-38-20, which among other things, suspends Government Code section 68115 and any other provision of law to the extent that those laws- impose or imply a limitation on my authority to authorize via emergency order or statewide rule, any court to take any action I deem necessary to maintain the safe and orderly operation of the courts." Those orders were not rescinded or repealed prior to Petitioner's hearing and are currently still in effect.
>
> He further alleges that even if there was good cause to extend the preliminary hearing, the court deprived him of a substantial right in refusing to release him from custody pursuant to Penal Code section 859b (b) when it set the preliminary hearing beyond the 10 day limit. However, there is no evidence that such a request was made prior to his preliminary hearing much less improperly denied. When a preliminary hearing is continued beyond the time specified by law, the defendant shall be released on his or her own recognizance while awaiting preliminary hearing unless certain conditions apply. (Pen. Code § 859b(b).) Petitioner concedes that no request for release was made at his arraignment when the preliminary hearing date was set, and there is no indication that a request was made during the interim hearing. Petitioner's inquiries during the preliminary hearing are the first evidence of any request for release pursuant to Section 859b. Furthermore, the Chief Justice's emergency orders extended the statutory deadline rather than a continuance for good cause. More importantly, even if the court erred in not releasing him, a court may not set aside the information based on such an error in the absence of a determination that the error might have affected the outcome of the preliminary examination. (People v. Standish (2006) 38 Cal.4th 858, 882.) Petitioner has not alleged how release from custody would have affected the outcome of his preliminary hearing.

ECF No. 14-30 at 2-3.

////

1        D.  Objective Reasonableness Under § 2254(d)

2        The state court ruled on exclusively state law grounds that are unreviewable here.  See

3 Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (state court's rulings on matters of state law are

4 binding in federal habeas).  In any event, even if there had been a violation of a state statute—

5 which there plainly was not—that would not entitle petitioner to federal habeas relief, which lies

6 only for violation of federal rights.  Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas

7 relief does not lie for errors of state law).  Petitioner's jurisdictional theory has no basis in federal

8 constitutional law.  Absent Supreme Court authority establishing the rule on which petitioner

9 relies, there can be no federal habeas relief.  Wright v. Van Patten, 552 U.S.120, 125 (2008) (per

10 curiam).  And because the federal constitution did not guarantee petitioner a preliminary hearing

11 in the first place, see Howard, 747 F.2d at 510, any procedural defects related to such a hearing

12 cannot amount to a federal constitutional violation.  Petitioner is not entitled to relief on this

13 claim.

14     III.    Claim Three: Speedy Trial

15        A.  Petitioner's Allegations and Pertinent State Court Record

16        Petitioner alleges that he was denied his right to a speedy trial by the superior court's

17 granting of a prosecution request for continuance in late September 2021, and its denial in

18 December 2021 of a defense motion to dismiss on speedy trial grounds.  ECF No. 1 at 14.

19 The record reflects a total of three continuances of the trial during the fall of 2021, all on grounds

20 that Agent Grey, the victim and key prosecution witness, was severely ill with Covid.  See 2 CT

21 319-320 (ECF No. 14-2 at 19-20); 1 CT 33 (ECF No. 14-1 at 33); 2 CT 423-428 (ECF No. 14-2

22 at 123-128).  The prosecutor represented to the court that Agent Grey had contracted Covid in

23 September and remained on medical leave through mid-December, was under doctor's orders to

24 remain at home, and was using an oxygen machine to breathe.  2 CT 426 (ECF No. 14-2 at 126).

25 The trial court found good cause to grant each of the three requested continuances over

26 ////

27 ////

28 ////

10

1     petitioner's objections.  Agent Grey eventually testified on December 29, 2021, via zoom.  8 RT

2     290 (ECF No. 14-14 at 24).[5]

3               B.  The Clearly Established Federal Law

4          The United States Constitution provides that criminal defendants have "the right to a

5     speedy and public trial."  U.S. Const., amend. VI; see also Doggett v. United States, 505 U.S.

6     647, 651 (1992).  The determination of whether a defendant's right to a speedy trial was violated

7     is a fact-based inquiry that requires balancing various factors of the case including (1) the length

8     of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice

9     to the defendant.  Barker v. Wingo, 407 U.S. 514, 530-532 (1972).  The length of delay serves as

10    a "triggering mechanism," and if there is not a delay which is presumptively prejudicial, then

11    there is no reason to consider the other balancing factors.  Id. at 530.

12              C.  The State Court's Ruling

13         The California Supreme Court denied the claim summarily.  The issue had been

14    previously addressed by the superior court's February 7, 2002, order denying petitioner's habeas

15    petition.  ECF No. 14-30 at 3.  The state habeas court rejected petitioner's argument that there

16    was no good cause for the continuance, noting that it was within the trial court's discretion to

17    grant the requests and that "the basis for the continuance was that the witness was not physically

18    well enough to testify, a condition that could neither be controlled by the prosecution nor

19    remedied by remote hearing."  Id.  The issue was addressed exclusively under state law.  See id.

20              D.  Objective Unreasonableness Under § 2254(d)

21         There is nothing remarkable about a trial court's determination that the serious illness of a

22    complaining witness warrants continuance of a trial, and there is nothing objectively unreasonable

23    about the reviewing courts' failure to identify any constitutional violation on these facts.  The

24    delay of petitioner's trial—three continuances of 30 days each, for a total of 90 days—is

25    _____

26    [5]  As the court explained to the jury, "Agent Grey… is going to testify by Zoom because he has
      been out sick for quite a while, and rather than bring him in here and risk his and anybody else's

27    health, he is able to testify by Zoom. That is a provided accommodation because of the pandemic
      that is approved by the California Supreme Court and Judicial Council and is being done in cases

28    all over the state, all over the country."  Id.

1  insufficient to trigger any constitutional inquiry under Barker v. Wingo, supra.  See Doggett, 505

2  U.S. at 652, n. 1 (noting that lower courts have generally attached a presumption of prejudice,

3  sufficient to trigger a Barker inquiry, when the delay "approaches one year."); United States v.

4  Gregory, 322 F.3d 1157, 1161–62 & n.3 (9th Cir. 2003) (noting "a general consensus among the

5  courts of appeals that eight months constitutes the threshold minimum.").  Accordingly, the state

6  courts' failure to conduct Barker analysis cannot constitute an unreasonable application of clearly

7  established federal law.

8      Moreover, the reason for the delay plainly supports the trial court's decision.  The trial

9  could not proceed without Agent Grey, who was expected to—and did—recover sufficiently to

10  testify within a reasonable period of time.  Petitioner argued that Agent Grey should have been

11  required to testify earlier by remote means, but the problem was not merely that the witness could

12  not come to court, but that he was too ill to testify at all.  When he was physically able to testify

13  by remote means, he did so.  See 8 RT 290 (ECF No. 14-14 at 24).

14      Additionally, petitioner has made no showing of prejudice from the delay.  Even with the

15  continuances, jury selection in this case began less than seven months after petitioner's arrest.

16  Petitioner has identified no specific exculpatory evidence that was lost because the trial did not

17  happen 90 days sooner, or any other concrete form of prejudice.  For all these reasons, the

18  reviewing state courts could reasonably have concluded that both the compelling justification for

19  the delay and the lack of prejudice to petitioner warranted rejection of the speedy trial claim.

20  Relief is unavailable.

21      IV.    Claim Four: Prosecutorial Suppression of Evidence

22          A.  Petitioner's Allegations and Pertinent State Court Record

23      Petitioner alleges that "the prosecution withheld evidence that the arresting officers used

24  excessive or unnecessary force in violation of due process."  ECF No. 1 at 21.  Petitioner's pro se

25  motion under Pitchess v. Superior Court, 11 Cal. 3d 531 (1974), for discovery of excessive force

26  ////

27  ////

28  ////

1    complaints filed against testifying officers, was denied.  Id.; see 1 CT 32 (ECF No. 14-1 at 32)

2    (minute order denying Pitchess motion for insufficient cause).[6]

3         At hearing on the Pitchess motion, the court found that the alleged acts of excessive force

4    by Agents Grey and Lewis did not precede the conduct for which petitioner was being

5    prosecuted, making the excessive force issue irrelevant to the criminal charges and to petitioner's

6    defense.  The court also noted that neither petitioner's general assertion that law enforcement

7    witnesses were lying nor his unsubstantiated theory of a conspiracy against him warranted

8    discovery of presumptively protected information.  2 RT 58-59 (ECF No. 14-8 at 23-24).

9           B.  The Clearly Established Federal Law

10   "[T]he suppression by the prosecution of evidence favorable to an accused ... violates due

11   process where the evidence is material either to guilt or to punishment, irrespective of the good

12   faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  The duty to

13   disclose applies to impeachment evidence as well as exculpatory evidence.  United States v.

14   Bagley, 473 U.S. 667, 676 (1985).  Evidence is material for Brady purposes if there is "a

15   reasonable probability that, had the evidence been disclosed to the defense, the result of the . . .

16   proceeding would have been different."  Cone v. Bell, 556 U.S. 449, 469-70 (2009).  In sum, for a

17   Brady claim to succeed on collateral review, petitioner must show: (1) that the evidence at issue is

18   favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed

19   by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put

20   differently, that prejudice ensued).  Banks v. Dretke, 540 U.S. 668, 691 (2004).

21          C.  The State Court's Ruling

22        The California Supreme Court denied this claim summarily.  Accordingly, this court asks

23   whether there is any reasonable basis for the state court's decision.  Richter, 562 U.S. at 102.

24          D.  Objective Unreasonableness Under § 2254(d)

25        Petitioner failed to present a prima facie Brady claim to the state courts, so summary

26   denial of relief cannot have been objectively unreasonable.  See Nunes, 350 F.3d at 1054-55.

27

28   [6]  Pitchess establishes the procedural method that allows for discovery of otherwise privileged
     personnel records in California.

First, petitioner does not identify any specific exculpatory evidence that was kept from him. While petitioner clearly believes he was subjected to excessive force upon arrest, that fact was known to him and not suppressed.  Petitioner's suspicion that the officers' personnel files may have contained incriminating information does not satisfy his burden of identifying specific evidence with exculpatory or impeachment value.  See Runningeagle v. Ryan, 686 F.3d 758 (9th Cir. 2012 (to state a Brady claim, petitioner must do more than speculate about nature of undisclosed evidence).  Second, the denial of a discovery motion by a trial judge is not suppression of evidence *by the prosecution*.  And third, petitioner has not demonstrated that access to the officers' files would likely have led to a different verdict.  Because plaintiff has not alleged facts sufficient to support any of the elements of a Brady claim, the state courts cannot have acted unreasonably in denying relief.

This court further notes that it is bound by the state court's ruling that the force allegedly used against petitioner was not relevant to the charges against petitioner as a matter of state law. See Bradshaw, 546 U.S. at 76.  This means that petitioner cannot, as a matter of law, establish any exculpatory or impeachment value as to any evidence of misconduct that might hypothetically have been in the personnel files.  The lack of relevance also defeats a showing of materiality for Brady purposes.  For all these reasons, petitioner is not entitled to relief.

V.      Claim Five: Constitutionality of California Penal Code § 71

A. Petitioner's Allegations and Pertinent State Court Record

In Claim Five, petitioner alleges that he "was convicted under a statute so vague and broad that the statute violates the petitioner's right to due process of law."  ECF No. 1 at 27.  The supporting facts provided are:

> On December 23, 2021, Judge Patrick Marlette instructed the prosecutor to amend the information to strike Count Two.  On December 29, 2021, Parole Agent Grey testified that he arrested petitioner on battery on a peace officer.  On January 3, 2022 the trial court erred when it failed to instruct the jury on defense regarding the lawful performance of duties of the peace officer and that it must be proven that petitioner intended his speech to be a threat.

Id.

1    California Penal Code § 71, under which petitioner was convicted,[7] provides in relevant

2    part as follows:

> Every person who, with intent to cause, attempts to cause, or
> causes, any officer or employee of any public or private educational
> institution ... to do, or refrain from doing, any act in the
> performance of his duties, by means of a threat, directly
> communicated to such person, to inflict an unlawful injury upon
> any person or property, and it reasonably appears to the recipient of
> the threat that such threat could be carried out, is guilty of a public
> offense.

8        B.  The Clearly Established Federal Law

9    "A [substantive criminal] statute can be impermissibly vague ... if it fails to provide

10   people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"

11   or "if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v.

12   Colorado, 530 U.S. 703, 732 (2000).  As for the notice requirement, the Supreme Court "has

13   consistently held that lack of precision is not itself offensive to the requirements of due process."

14   Roth v. United States, 354 U.S. 476, 491 (1957).  "[T]he Constitution does not require impossible

15   standards; all that is required is that the language conveys sufficiently definite warning as to the

16   proscribed conduct when measured by common understanding and practices." United States v.

17   Petrillo, 332 U.S. 1, 7-8 (1947).  "The root of the vagueness doctrine is a rough idea of fairness.

18   It is not a principle designed to convert into a constitutional dilemma the practical difficulties in

19   drawing criminal statutes both general enough to take into account a variety of human conduct

20   and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

21   Colten v. Kentucky, 407 U.S. 104, 110 (1972).

22       Moreover, the overbreadth doctrine "permits the facial invalidation of laws that inhibit the

23   exercise of First Amendment rights if the impermissible applications of the law are substantial

24   when 'judged in relation to the statute's plainly legitimate sweep.'" City of Chicago v. Morales,

25   527 U.S. 41, 52 (1999) (citations omitted).

26

---

27   [7] As noted above and referenced in the petition, petitioner was also initially charged with
     misdemeanor battery on a peace officer but that count was dismissed at trial.  The only charge
28   submitted to the jury was violation of Cal. Penal Code § 71.

15

1     C.  The State Court's Ruling

2        The California Supreme Court denied the claim summarily in habeas.  The trial court had

3     stated on the record its reasons for rejecting petitioner's vagueness challenge:

4              The statute is as clear as it can get. It says -- the issue with you is
               that there needs to be a threat directly communicated to inflict
5              unlawful injury upon any person or property.

6              And what reasonably appears to be in this case to the agent, that the
               threat can be carried out. So to me that threat is clear. It's very
7              clear.

8              On the opposite side, you know, I can see your point about how it
               talks about "any act in the performance of his duties," but, I mean,
9              again, to me that's pretty clear.

10             It sounds like in the facts of this case it relates to either a drug test
               or arrest. And no question those are both acts within the parole
11             agent's duties.

12             So I don't see any type of due process violation relating to the
               drafting of this statute, and so that motion is denied as well.
13

14    3 RT 109 (ECF No. 14-9 at 29).

15     D.  Objective Unreasonableness Under § 2254(d)

16       Petitioner has not identified any clearly established federal law that is inconsistent with

17    the state court's rejection of his vagueness and overbreadth challenge, and the undersigned is

18    aware of none.[8]  Penal Code § 71 has survived a challenge for vagueness in state court, see

19    People v. Zendejas, 196 Cal. App. 3d 367, 379 (1987), and a similar statute has survived a similar

20    challenge in the Ninth Circuit, see United States v. Naghani, 361 F.3d 1255, 1260 (9th Cir. 2004)

21    (statute criminalizing interference with flight attendants' duties by an act of intimidation was not

22    unconstitutionally vague).  These cases are persuasive authority as to what constitutes the

23    reasonable application of clearly established vagueness doctrine in this context, see Hurd v.

24    Terhune, 619 F.3d 1080, 1085 (9th Cir. 2010), and their reasoning is consistent with the outcome

---

25    [8]  The traverse cites authorities regarding the vagueness doctrine generally, but no case finding a
26    criminal statute similar to § 71 to be void for vagueness.  Only such authority constitutes "clearly
      established federal law" for purposes of federal habeas review.  See Wright, 552 U.S.at 125
27    (when Supreme Court authority does not "squarely address[]" an issue or establish a principle that
      "clearly extend[s] to a new context," there is no clearly established federal law within the
28    meaning of AEDPA).

1    here.  The U.S. Supreme Court has never held any analogous statute to be void for vagueness,

2    which dooms the claim in federal habeas.  See Wright, 552 U.S. at 125 (absent Supreme Court

3    precedent governing a claim, federal habeas relief is unavailable).

4    VI.    Claim Six: Judicial Bias

5            A.    Petitioner's Allegations and Pertinent State Court Record

6            Petitioner claims that he was "deprived of a fair trial by the trial judge making disparaging

7    remarks that vouched for the credibility of the prosecutor's witnesses."  ECF No. 1 at 29.  In

8    support of the claim he further alleges that the trial judge (1) "distorted the fact finding process

9    when he denied petitioner subpoenaed witness" on December 29, 2021; (2) reprimanded

10   petitioner in front of the jury for calling a witness by his given name; and (3) prevented petitioner

11   from impeaching the witness by repeatedly interrupting the defense questioning of the witness.

12   Id.  The petition does not provide details of these alleged acts of judicial misconduct and/or bias.[9]

13          The trial transcript reflects the following relevant exchange on December 29, 2021, during

14   petitioner's cross-examination of Agent Grey:

15                    Q: [Petitioner] So a couple questions I have. How tall are you,
16                    Joshua Grey?

17                    A: [Agent Grey] 6'3.

18                    Q: How much do you weigh, Joshua Grey?

19                    A. I prefer you address me as Agent Grey and stop using my first
                      name.

20                    THE COURT: Do so, Mr. Wilburn.

21                    MR. WILBURN: I'll call him Mr. Grey

22                    THE COURT: Call him Agent Grey.

23                    MR. WILBURN: I'll call him Mr. Grey.

24                    THE COURT: Sir, you'll call him Agent Grey. He has a title, and

25   _____
     [9]  In his traverse, petitioner presents a detailed account of adverse rulings and other events
26   spanning the course of his self-representation that he believes demonstrate bias against him.  ECF
     No. 22 at 57-59.  The factual basis for claims for relief cannot be expanded by allegations
27   presented in a traverse.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).  In any
     event, none of the referenced rulings or comments support a prima facie claim of judicial bias for
28   the same reasons, discussed above, that the incidents referenced in the petition fail to do so.

                                                    17

1    you'll address him by that title or you'll not address him at all. Do
2    you understand me? If you want to proceed with this, follow the
     rules of the court. That's the deal. I told you that.

3    MR. WILBURN: Your Honor –

4    THE COURT: You want to hang this up by whether you call him
     Agent or Mr.?
5
6    MR. WILBURN: The fact that you guys get me off of what I'm
     doing –

7    THE COURT: Sir, you call him Agent.

8    8 RT 338 (ECF No. 14-14 at 72).

9         The transcript also reflects that on the same day, after the prosecution rested in its case,

10   petitioner gave his opening statement.[10]  During the statement, petitioner was repeatedly

11   admonished by the court for referring to matters which had previously been ruled irrelevant.

12   When petitioner began telling the jury about his conversation with a person named K. Diesslin,

13   the judge said, "You don't have that person subpoenaed."  8 RT 379 (ECF No. 14-14 at 113).

14   Petitioner insisted that he did.  Id.  The judge clarified that the witness had been disallowed on

15   relevance grounds.  Id.

16        B.  The Clearly Established Federal Law

17        It is clearly established that due process requires a fair trial in a fair tribunal.  In re

18   Murchison, 349 U.S. 133, 136 (1955).  This includes a judge with no actual bias against the

19   defendant or interest in the outcome of the case.  Bracy v. Gramley, 520 U.S. 899, 904-05 (1997).

20   It is equally well established that to prevail on a claim of judicial bias a petitioner must plead and

21   prove facts sufficient to "overcome a presumption of honesty and integrity in those serving as

22   adjudicators."  Withrow v. Larkin, 421 U.S. 35, 47 (1975).  There is no constitutional violation

23   without a showing of facts that objectively demonstrate a serious risk of actual bias.  See

24   Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 883-84 (2009).  Judicial rulings alone

25   almost never establish bias; a significant "extrajudicial source" factor must be present.  Liteky v.

26   United States, 510 U.S. 540, 555 (1994).  Judicial expressions of impatience, frustration,

27

28   ───────────────
     [10]  The opening statements is transcribed at 8 RT 375-381 (ECF No. 14-14 at 109-115).

18

1   annoyance, and even anger in the course of courtroom administration also fail to establish bias.

2   Id. at 555-556.

3           C.  The State Court's Ruling

4        The California Supreme Court denied this claim summarily, indicating that petitioner had

5   failed to present a prima facie case.

6           D.  Objective Unreasonableness Under § 2254(d)

7        There can have been no objectively unreasonable application of federal law because

8   petitioner presented the state court with no extrajudicial source of bias.  He relies entirely on

9   adverse rulings and on the judge's attempts at courtroom management.  While it is true that both

10  petitioner's examination of Agent Grey and his opening statement were interrupted by the court,

11  that was because petitioner was failing to abide by the rules of evidence, the court's rulings, and

12  the court's directions on matters of courtroom decorum.  The record reflects nothing more than a

13  trial judge's frustration with a pro se defendant.  Having carefully reviewed the transcript, the

14  undersigned finds no disparagement or vouching, let alone indications of actual bias,

15  infringement of petitioner's rights, or other judicial misconduct.  Because this claim is not based

16  on any acts that are cognizable as expressions of judicial bias, its summary denial was not

17  unreasonable.

18  VII.    Claim Seven: Cruel and Unusual Punishment

19          A.  Petitioner's Allegations and Pertinent State Court Record

20       Petitioner claims that he was "convicted of a misdemeanor but sentenced to a felony" in

21  violation of the prohibition on cruel and unusual punishment.  ECF No. 1 at 30.  He sets forth the

22  following supporting facts:

23          On May 20, 2022 in Department 19 Judge Marlette denied

24          petitioner's request to continue the sentencing hearing so petitioner could file a new trial motion.  Petitioner pled no contest to a crime

25          in 2002 that was not a violent crime at the time of the commission and therefore is not a strikable offense.  Petitioner could have been

26          sentenced to a misdemeanor.  The trial court abused its discretion.

    Id.

27          B.  The Clearly Established Federal Law

28       The Eighth Amendment prohibits not only "barbaric punishments," Solem v. Helm, 463

U.S. 277, 284 (1983), but also "extreme sentences that are 'grossly disproportionate' to the crime," Ewing v. California, 538 U.S. 11, 23 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy J., concurring)).  Such instances are "exceedingly rare," Rummel v. Estelle, 445 U.S. 263, 272 (1980), and occur in only "extreme" cases, Lockyer v. Andrade, 538 U.S. 63, 72 (2003).  The Supreme Court has upheld California's three-strikes sentencing law against facial Eighth Amendment challenge.  Ewing, 538 U.S. at 25-28. Accordingly, it is clearly established that even a life sentence for a relatively minor offense committed by a recidivist does not per se violate the Eight Amendment.  Id.; see also Lockyer, 538 U.S. at 72 (rejecting Eighth Amendment claim brought by a habeas petitioner who had received a third-strike sentence of two consecutive 25-to-life terms for shoplifting $150 worth of videotapes).

C.  The State Court's Ruling

The California Supreme Court denied the claim summarily.

D.  Objective Unreasonableness Under § 2254(d)

No U.S. Supreme Court precedent commanded, or even permitted, a different result on this claim.  Petitioner's offense of conviction, threatening a public official in violation of Cal. Penal Code § 71, is a "wobbler" that may be charged as either a misdemeanor or a felony.  See Cal. Penal Code § 71(a)(1).  Petitioner was charged with a felony, a decision that is within the discretion of the prosecutor.  See Ewing, 538 U.S. at 17.  The trial court also has discretion to reduce a statutory wobbler charge to a misdemeanor at sentencing.  Lockyer, 538 U.S. at 67.  The Supreme Court has recognized that "[u]nder California law, a 'wobbler' is presumptively a felony and 'remains a felony except when the discretion is actually exercised' to make the crime a misdemeanor."  Ewing, 538 U.S. at 17-18.  Accordingly, in both Ewing and Lockyer, the Supreme Court rejected the argument that a third-strike life sentence was constitutionally impermissible where the offense of conviction was a wobbler.  If the Eighth Amendment is not offended by a life sentence for a wobbler offense, then it cannot be offended by the four-year sentence that petitioner received for a wobbler charged as a felony.

Finally, to the extent petitioner alleges that his 2002 conviction should not have been counted as a "strike" prior, that is entirely a matter of California law.  A state court's

20

1    misapplication of its own sentencing laws does not justify federal habeas relief.  Christian v.

2    Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  The only Eighth Amendment limit that applies is the

3    gross disproportionality principle addressed above, and because petitioner's sentence involved no

4    gross disproportionality his attack on the prior provides no grounds for relief.

5         VIII.   Claim Eight: Appellate Process

6            A.  Petitioner's Allegations and Pertinent State Court Record

7         Petitioner contends that his due process rights were violated when he was denied an

8    extension of time to file a pro se supplemental brief after appointed counsel filed a Wende brief,

9    and because he was precluded from supplementing the appellate record.  ECF No. 1 at 30-31.

10         The state court record reflects that petitioner had the opportunity to submit a supplemental

11    brief and to seek augmentation of the record.  He received three extensions of time to submit his

12    brief.  ECF No. 14-23; ECF No. 14-24; ECF No. 14-25.  A fourth request was denied on grounds

13    that petitioner had made no showing of progress in preparing his supplemental brief.  ECF No.

14    14-26.  Petitioner's initial request to augment the record was denied without prejudice on grounds

15    that he had failed to identify with particularity the documents at issue and their relevance to issues

16    on appeal.  ECF No. 14-23.

17            B.  The Clearly Established Federal Law

18         Petitioner has identified no U.S. Supreme Court precedent recognizing a federal

19    constitutional right to supplement a counseled brief with a pro se brief on appeal of a state

20    criminal conviction, or to supplement the appellate record independently of appointed counsel.

21    The undersigned is aware of no such authority.

22            C.  The State Court's Ruling

23         The California Supreme Court denied this claim summarily.

24            D.  Objective Unreasonableness Under § 2254(d)

25         Because the U.S. Supreme Court has never held that Due Process is offended by the denial

26    of an opportunity for a criminal defendant-appellee to expand the record on appeal or file an

27    opening brief independently of appointed counsel, there is no basis for federal habeas relief.  See

28    Wright, 552 U.S. at 125.  That California permits submission of pro se supplemental briefs does

1   not create any federally protected right.  The state courts' denial of a fourth extension of time and

2   failure to permit augmentation of the record beyond that designated by counsel does not present a

3   cognizable due process claim.

4   CONCLUSION

5        For the reasons set forth above, IT IS HEREBY ORDERED that Jamal Rowe, Chief

6   Deputy Administrator of Northern Region Adult Parole, is substituted as respondent.

7        IT IS FURTHER RECOMMENDED that the petition for writ of habeas corpus be denied.

8        These findings and recommendations are submitted to the United States District Judge

9   assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

10   after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

13   he shall also address whether a certificate of appealability should issue and, if so, why and as to

14   which issues.  <u>See</u> 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

15   within fourteen days after service of the objections.  The parties are advised that failure to file

16   objections within the specified time may waive the right to appeal the District Court's order.

17   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18   DATED: June 13, 2025

19

20   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE